2016 – 2433, 2016 – 2514

_____

### In the United States Court of Appeals for
### the Federal Circuit

METALCRAFT OF MAYVILLE, INC.,

dba SCAG POWER EQUIPMENT,

*Plaintiff-Appellee*

v.

THE TORO COMPANY

and

EXMARK MANUFACTURING CO., INC.,

*Defendants-Appellants*

_____

Appeals from the United States District Court for the Eastern District of Wisconsin
in Case No. 2:16-CV-00544

_____

### Defendants-Appellants' Reply Brief

_____

Anthony R. Zeuli
Rachel C. Hughey
MERCHANT & GOULD PC
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

*Attorneys for Defendants-Appellants
The Toro Company and Exmark
Manufacturing Co., Inc.*

October 20, 2016

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants The Toro Company and Exmark Manufacturing Co., Inc., certifies the following:

1.     The full name of every party or amicus represented by me is:

The Toro Company and Exmark Manufacturing Co., Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

The Toro Company, hereby states that it has no parent corporation and that

no publicly held corporation owns 10% or more of its stock.

Exmark Manufacturing Co., Inc., hereby states that it is a wholly owned

subsidiary of The Toro Company, which has no parent corporation and with no

publicly held corporation owning 10% or more of its stock.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Thomas J. Leach, Shane A. Brunner, Stephen R. Howe, MERCHANT & GOULD PC

October 20, 2016                    /s/ Rachel C. Hughey
                                    Rachel C. Hughey
                                    *Attorney for Defendants-Appellants*
                                    The Toro Company and Exmark
                                    Manufacturing Co., Inc.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................2

TABLE OF CONTENTS...........................................................................3

TABLE OF AUTHORITIES ......................................................................5

ARGUMENT ...........................................................................................7

I.    As the parties now agree, "an entire body of an operator" includes the operator's hands and arms, which means the district court's claim construction must be reversed. ........................................................8

    A.    Scag's construction of "entire body," which the district court adopted, was in error because it excluded the operator's hands and arms. ..........................................................................8

    B.    In an attempt to save its injunction, Scag now proposes a construction of "support" rather than "an entire body of an operator," but its arguments lack merit and were waived...................11

    C.    Scag attempts to re-tool its unfounded "chair" construction adopted by the district court, but its arguments cannot salvage this erroneous construction.................................................13

        1.    The prior art had seats but did not support an entire body of an operator because shock loads were transmitted through components connected to the chassis in contact with the operator. ....................................................14

        2.    To support an entire body of an operator, Scag's only disclosed embodiment isolates the entire operator from components in contact with the chassis, including steering controls. ....................................................16

        3.    Claim differentiation does not require "an expression of manifest exclusion or an express disclaimer."..........................18

        4.    Scag disclaimed steering controls mounted to the chassis, the prior art feature it now attempts to claim.............................20

5.    It is irrelevant if Scag's purported invention solved several problems. .................................................... 21

II.    Under the proper construction, the preliminary injunction must be reversed. ........................................................................ 23

A.    The district court meant what it said—Toro's platform does not support the operator's hands and arms. ................................ 24

B.    Scag's alternate infringement theories were waived and lack support. ......................................................................... 25

III.    Toro raised substantial questions of anticipation and obviousness. .............. 27

A.    Henriksson discloses an "operator platform." .................................. 28

B.    Scag does not dispute that Henriksson was trying to solve the same problems as Scag. ............................................................ 30

C.    Scag's "alternate grounds" are both incorrect and untimely .............. 31

IV.    The Equitable Factors Weigh Against The Injunction. ................................. 32

V.    The Injunction Violates Rule 65 ................................................................ 34

CONCLUSION ............................................................................................. 35

PROOF OF SERVICE ................................................................................... 37

CERTIFICATE OF COMPLIANCE ............................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M v. Avery Dennison*,
   673 F.3d 1372 (Fed. Cir. 2012) ........................................................26

*Akamai v. Limelight Networks*,
   805 F.3d 1368 (Fed. Cir. 2015) ........................................................20

*Andersen v. Fiber Composites*,
   474 F.3d 1361 (Fed. Cir. 2007) ........................................................22

*Bicon v. Straumann*,
   441 F.3d 945 (Fed. Cir. 2006) ........................................................16

*Celgard v. LG Chem.*,
   624 Fed. App'x 748 (Fed. Cir. 2015) ................................................33

*Hill-Rom Servs. v. Stryker*,
   755 F.3d 1367 (Fed. Cir. 2014) ........................................................17

*Int'l Rectifier v. IXYS*,
   383 F.3d 1312 (Fed. Cir. 2004) ..................................................34, 35

*Liebel-Flarsheim v. Medrad*,
   358 F.3d 898 (Fed. Cir. 2004) ........................................................17

*Luminara Worldwide v. Liown Elecs.*,
   814 F.3d 1343 (Fed. Cir. 2016) ........................................................21

*Moore v. Std. Register*,
   229 F.3d 1091 (Fed. Cir. 2000) ........................................................24

*Multiform Desiccants v. Medzam*,
   133 F.3d 1473 (Fed. Cir. 1998) ........................................................20

*Mycogen Plant Sci. v. Monsanto*,
   243 F.3d 1316 (Fed. Cir. 2001) ........................................................20

*Oakley v. Sunglass Hut*,
   316 F.3d 1331 (Fed. Cir. 2003) ........................................................31

*Poly-America v. API Indus.*,
    2016 U.S. App. LEXIS 18486 (Fed. Cir. 2016) .................................................21

*Sage Prods. v. Devon Indus.*,
    126 F.3d 1420 (Fed. Cir. 1997) ............................................................13, 26, 31

*ScriptPro v. Innovation Assocs.*,
    2016 U.S. App. LEXIS 14919 (Fed. Cir. Aug. 15, 2016) .................................20

*Secure Web v. Microsoft*,
    640 Fed. Appx. 910 (Fed. Cir. 2016).................................................................18

*State Contr. & Eng'g Corp. v. Condotte Am.*,
    346 F.3d 1057 (Fed. Cir. 2003) ...................................................................29, 32

*Teleflex v. Ficosa N. Am.*,
    299 F.3d 1313 (Fed. Cir. 2002) .........................................................................17

*Warner Chilcott Labs. Ireland v. Mylan Pharms.*,
    451 Fed. App'x 935 (Fed. Cir. 2011) ................................................................28

*Wi-LAN v. Apple*,
    830 F.3d 1374, 2016 U.S. App. LEXIS 13860 (Fed. Cir. 2016).................18, 20

*Winter v. NRDC*,
    555 U.S. 7 (2008).............................................................................................33

## Other Authorities

Federal Rule of Civil Procedure 12 ........................................................................34

Federal Rule of Civil Procedure 65 ................................................................34, 35

# ARGUMENT

In the face of an indefensible claim construction, Scag now admits that "an entire body of an operator" includes the operator's hands and arms, and thus the operator platform must also support the operator's hands and arms. (Red Br. at 15 ("in order for the operator platform to support the 'entire body' of the operator when the operator is seated in the seat, it must support the torso, arms, hands and the feet").) This admission is all that is required to reverse the district court's preliminary injunction because the district court found that Toro's operator platform does *not* support the operator's hands and arms: "All of the accused mowers have steering controls connected to the chassis, not the suspended operator platform, **which means that the platform does not support the rider's arms and hands**." (Appx10 (emphasis added).) Thus, there is no infringement.

In an attempt to maintain the preliminary injunction, Scag is forced to argue that the district court did not mean what it said, and that contrary to the court's statement Toro's platform supports the operator's hands and arms via the seat alone. This argument is inconsistent with the district court's decision, Scag's arguments below, the facts of this case, and the representations throughout Scag's patent. Had Scag admitted that "an entire body of an operator" includes the operator's hands and arms, and thus the operator platform must support the operator's hands and arms during use, a preliminary injunction never would have

issued. Scag's change in position cannot salvage that which should never have been obtained.

**I.    As the parties now agree, "an entire body of an operator" includes the operator's hands and arms, which means the district court's claim construction must be reversed.**

    A.    <u>Scag's construction of "entire body," which the district court adopted, was in error because it excluded the operator's hands and arms.</u>

Scag's shifting claim construction position on appeal underscores the weakness of the position it advocated before the district court and that the district court adopted. (*Compare* Appx441-442 *with* Red Br. at 15-17.) Scag now admits, as it must, that "an entire body of an operator" includes the operator's hands and arms, and thus the operator platform must also support the operator's hands and arms during use of the utility vehicle. (Red Br. at 15-17.) This is contrary to what Scag argued below.

Instead, Scag repeatedly argued for a construction that did not include the operator's hands and arms. (Appx441-442.) According to Scag, its construction "in the context of how a person sits in a conventional chair" required only the *torso* and *feet*: "the seat of the chair that supports the *torso* and the floor that supports the *feet*…." (Appx441 (emphasis added).) Scag argued that this construction meant "in order for the operator platform to support the 'entire body' of the operator when the operator is seated in the seat, it must support the *torso* and the *feet*." (Appx441-442 (emphasis added).) In its opposition to Toro's request for a stay pending

appeal, Scag again asserted that the platform must support only the *torso* and the *feet*.[1] (Doc. No. 21 at 7 ("in order for the operator platform to support the 'entire body' of the operator when the operator is seated in the seat, it must support the *torso* and the *feet*") (emphasis added).) Scag argued that, under this construction, Toro's accused mowers infringe because "Defendants clearly have a suspended operator platform that supports the *torso* and *feet* of the operator thus meeting the 'entire body' limitation of the asserted claims." (Appx442 (emphasis added).) By contrast, before the district court Toro explained that "an entire body of an operator" must include the operator's hands and arms. (Appx375 ("The plain meaning of 'an entire body of an operator' includes the operator's hands.").)

As the district court recognized, "[a]ll of the accused mowers have steering controls connected to the chassis, not the suspended operator platform, which means that the platform does not support the rider's arms and hands." (Appx10.) But the district court accepted Scag's "chair" construction, which did not include the operator's hands and arms: "[a] person having ordinary skill in the art would understand the 'entire body' limitation in reference to how a person sits in an ordinary chair." (Appx12.) Thus, the court concluded, "the fact that the defendants'

---

[1] *See also* Doc. No. 21 at 8 ("the *torso* is supported by the seat and the *feet* are supported by the floor") (emphasis added); *id.* ("the 'entire body' limitation is not rendered superfluous by the district court's construction because the operator platform must support the operator's *feet* and *torso* (indirectly via the seat), just as the floor supports the *feet* and *torso* (indirectly via the seat) when a person sits in an ordinary chair.") (emphasis added).

lawnmowers have steering controls attached to the chassis, as opposed to the operator platform, is not a defense to infringement." (Appx12.)

Scag suggests that the district court's construction did not exclude the operator's hands and arms. (Red Br. at 17-18.) To distance itself from its previous arguments, Scag now inserts hands and arms into its "conventional chair" construction. (*Compare* Appx441 ("At a most basic level, there are two supports for a person's body when they are sitting on a chair that is on the floor – the seat of the chair that supports the *torso* and the floor that supports the *feet*. . . .") (emphasis added) *with* Red Br. at 15 ("At a basic level, there are two supports for a person's body when they are sitting on a chair that is on the floor – the seat of the chair that supports the torso, *arms*, and *hands*, and the floor that supports the feet.") (emphasis added).) There is absolutely no support for Scag's suggestion that the district court's "ordinary chair" construction included hands and arms. The parties' claim construction dispute centered on whether "entire body" included the operator's hands and arms. (Appx441-442; Appx375.) While finding the platform of Toro's accused products does not support the operator's hands and arms, the district court nevertheless found Toro failed to raise a substantial question on infringement, demonstrating the district court's construction of "entire body" excluded the operator's hands and arms. (Appx10-12.)

Scag's concession that "an entire body of an operator" includes the operator's hands and arms proves that the district court's claim construction and resultant preliminary injunction were in error and should be reversed.

B.    <u>In an attempt to save its injunction, Scag now proposes a construction of "support" rather than "an entire body of an operator," but its arguments lack merit and were waived.</u>

Scag is forced to argue a new claim construction theory on appeal. Scag urges that "support" in the '475 patent means "supports the weight" of the operator. (Red Br. at 16.) Thus, Scag argues, the disputed claim element is met "where the operator platform supports the weight of the operator (including the hands and arms) during use." (Red Br. at 16.) Scag's arguments fail on multiple grounds.

First, Scag's proposed construction of "support" to mean supporting the weight of the operator finds no support in the '475 patent. The discussions of "weight" in the specification occur *exclusively* during the discussions of the suspension system, *not* the operator platform. (Appx41, 2:11-21, 2:42-44; Appx43, 6:7-12; Appx44, 7:56-59, 8:19-25.) The suspension system is claimed in a separate element of the asserted claims. (Appx46-47, claims 11, 14, 21.) The claim term in dispute requires that the operator platform, not the suspension system, support an entire body of an operator during use of the utility vehicle. (*Id*.) The specification

never suggests that "support" as used in connection with the operator platform has anything to do with weight.

Second, Scag's "weight" argument is inconsistent with how it distinguished the prior art and how it described its invention, which focused on isolating the operator from shock loads. (Blue Br. at 15-23, 37-39.) Scag never criticized the prior art for failing to support the entire *weight* of the operator. The problem with the prior art was the operator's hands and sometimes feet were in contact with components such as footrests and steering controls connected to the chassis, so shock loads were transmitted from the chassis to the operator. (Appx41, 1:18-21, 28-34, 50-60.) Indeed, Scag acknowledges that it distinguished its invention over prior art devices where the operator's feet were in contact with the chassis and thus subject to shock loads. (Red Br. at 15-16.) Thus, unlike Scag's claimed invention, the prior art did not isolate an entire body of an operator from shock loads.

Scag confirms that its invention was "to better insulate" the operator from unwanted shocks. (Red Br. at 4.) This relates to isolating an entire body of an operator from chassis shock loads through an operator platform suspended from the chassis. (Blue Br. at 15-16, 22-23.) The invention "suspends the operator platform 70 from the chassis in a manner that isolates an operator from vibrations, or shock-type or other loads that are generated on or by the mower 5 during use or

result from driving the mower 5 across uneven terrain…." (Appx42, 3:66-4:7.) It has nothing to do with weight.

Finally, this new claim construction argument was not raised before the district court or this Court during the stay briefing. Scag did not propose a construction of "support" and made no mention of "weight." This new claim construction argument is waived. *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997).

C.    <u>Scag attempts to re-tool its unfounded "chair" construction adopted by the district court, but its arguments cannot salvage this erroneous construction.</u>

While Scag now acknowledges that an entire body of an operator includes the operator's hands and arms, it continues to urge that the court's "ordinary chair" construction is correct. (Red Br. at 15-17.) Scag's "ordinary chair" arguments are wrong. As discussed in detail in Toro's Opening Brief, there is no support for the district court's "in reference to how a person sits in an ordinary chair" construction. (Blue Br. at 35-37.) Scag does not dispute that the specification never mentions the word "chair." And Scag cannot argue that the plain and ordinary meaning of "an entire body of an operator" has anything to do with a chair. Indeed, if the patent claims meant support a person as they would sit in a chair, they could have been so drafted. Scag's attempts to re-tool and salvage the construction must be rejected.

1.    <u>The prior art had seats but did not support an entire body of an operator because shock loads were transmitted through components connected to the chassis in contact with the operator.</u>

Scag now argues "when a person sits in an ordinary chair, the person's hands and arms are supported by the chair." (Red Br. at 17.) As discussed above, this is not the construction Scag argued below or used by the district court. (Appx10-12; *supra* I.A.) Further, the construction is inconsistent with the purported invention. (Blue Br. at 15-24.) To isolate the entire body of the operator from shock loads, all components that are in contact with the operator must be connected to the platform. (Appx41, 1:30-33.)

Scag argues its interpretation "harmonizes with the '475 patent's distinction over prior art devices featuring a suspension system for a seat, but where the operator's feet are supported by the chassis and thus subject to additional vibration." (Red Br. at 15-16.) It does not. The suspended seat did not support the entire body of the operator, as shock loads were transmitted to the operator through the operator's *feet and hands*: "seat suspensions leave operators susceptible to exposure of shock loads through foot rests, controls, or components other than the seat that are in contact with the operator." (Appx41, 1:30-33; Appx41, 1:25-33 ("seat suspensions fail to reduce transmission of . . . shock-type or other loads").)

Further, Scag is silent on how its interpretation "harmonizes" with the '475 patent's distinction over Scheele. Scheele has a seat and footrest on a suspended

operator platform. (Appx41, 1:34-39.) Despite having a suspended platform that supported the seat and operator's feet, Scag still criticized Scheele because the suspended platform in Scheele did not isolate the operator's arms, as shock loads were "transmitted through the steering levers [mounted to the chassis] and into the arms of the operator." (Appx41, 1:50-60.) Scag's suggestion that its "ordinary chair" supports an entire body of an operator is inconsistent with how it described and distinguished the prior art, which had seats and sometimes even suspended footrests and yet did not support an entire body of an operator.

Indeed, Scag elsewhere admits that its "chair" alone does not support a person's feet, the floor does. (Red Br. at 15-16.) Scag provides absolutely no reason—and there is none—that the operator platform must support the operator's feet with footrests connected to the platform and yet the platform does not support the operator's hands and arms with the controls connected to the platform. Scag asserts that its interpretation is consistent with what it describes as the preferred embodiment, which includes a "foot support tier" mounted to the platform. (Red Br. at 15 (citing Appx43, 6:1-6.).) But its interpretation is not consistent with this (sole) embodiment, which also includes steering controls mounted to the platform. (Appx43, 6:7-22.)

Scag agrees that the "seat" element and "an entire body of an operator" element are two separate requirements. (Red Br. at 17.) But an entire body of an

operator has to mean something different than an operator sitting in a seat. *Bicon v. Straumann*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim"). Scag's construction renders them redundant because it relies on an operator sitting in a "chair," or seat, to meet the separate claim element of "an entire body of an operator." (Blue Br. at 36-37.)

      2.    <u>To support an entire body of an operator, Scag's only disclosed embodiment isolates the entire operator from components in contact with the chassis, including steering controls.</u>

Scag's sole embodiment further demonstrates that the purpose of the invention was to support the entire body of the operator by isolating the operator from shock loads, including isolating the operator's hands and arms from shock loads via steering controls mounted to the platform. (Blue Br. at 19-23, 38-43.) Scag does not dispute this, but urges these are merely discussions of a preferred embodiment. (Red Br. at 25-31.)

Scag appears to acknowledge that there is only one embodiment disclosed in the '475 patent. (Red Br. at 21.) This is consistent with its prior arguments and the district court's decision. (Appx438; DI 21 at 9-10; Appx10.) At other points, though, Scag asserts that this is *not* the only embodiment, urging the '475 patent "contemplates an embodiment having a suspended operator platform that supports the entire body where the steering controls are not mounted to the operator platform." (Red Br. at 19 (citing Appx41, 2:37-41).) The passage Scag cites does

not describe controls that are in contact with the operator during use of the vehicle. (Appx41, 2:37-41; Blue Br. at 41-42.) Controls that are in contact with the operator, such as steering controls, are always described as mounted on the suspended platform and thus isolated from the chassis. (Appx42, 2:37-41.) The specification discloses only a single embodiment, with steering controls mounted to the operator platform. (Blue Br. at 19-21, 40.)

This is not just a "sole" embodiment—it is the claimed invention. Scag incorrectly characterizes Toro's argument as limiting the claims due to Scag's disclosure of only a single embodiment, and cites to a number of cases allegedly supporting its position. (Red Br. at 26.) But Toro has not argued that the claims should be "limited" because the '475 patent disclosed a single embodiment. Instead, the specification makes clear that *this* embodiment was the invention itself, not merely a preferred embodiment. (Blue Br. at 37-41.) The cases cited by Scag acknowledge that the specification can define the claim scope as the disclosed embodiment. *Liebel-Flarsheim v. Medrad*, 358 F.3d 898, 907 (Fed. Cir. 2004); *Teleflex v. Ficosa N. Am.*, 299 F.3d 1313, 1326-27 (Fed. Cir. 2002); *Hill-Rom Servs. v. Stryker*, 755 F.3d 1367, 1372 (Fed. Cir. 2014).

Scag's reference to this sole embodiment, which has controls mounted to the operator platform, as "the present invention" further demonstrates that this embodiment *is* the claimed invention. (Blue Br. at 38.) Scag argues that this

principle does not apply because Scag does not refer to the sole embodiment as "the present invention" but "in accordance with the present invention." (Red Br. at 28.) Scag fails to explain how such a distinction is relevant. It is not. The *Secure Web* case found the use of "according to the present invention" and "according to the instant invention" demonstrated the figures depicted the claimed invention rather than merely a preferred embodiment. *Secure Web v. Microsoft*, 640 Fed. Appx. 910, 914-15 (Fed. Cir. 2016).

3.    Claim differentiation does not require "an expression of manifest exclusion or an express disclaimer."

Claim differentiation does not apply unless the claims are otherwise identical and cannot overcome the claim language or a contrary construction dictated by the written description. (Blue Br. at 44-46.) As this Court recently recognized, "'Claim differentiation is a guide, not a rigid rule.'" *Wi-LAN v. Apple*, 830 F.3d 1374, 2016 U.S. App. LEXIS 13860, at *43-45 (Fed. Cir. 2016) (quotation omitted) (rejecting patentee's argument that "UL connections" in one claim and "connections" in another indicated an "intent to establish different meanings for these terms" because the specification made clear that the meanings were the same).

Scag urges that its asserted claims do not require steering controls. (Red Br. at 12.) Scag is wrong. Without steering controls, it would not be possible to use the claimed vehicles, as the claims specifically require "an operator platform that

supports the seat and an entire body of an operator *during use* of the utility

vehicle." (Appx46, claim 11 (emphasis added).) Further, Scag's "invention" is a

vehicle with steering controls mounted to the operator platform, not the chassis,

and Scag's claim differentiation arguments are without merit. (Blue Br. at 19-24,

44-46.)

Scag relies heavily on claim differentiation, arguing "the addition of steering

controls in claim 12 is the only 'meaningful' difference between claim 11 and

claim 12." (Red Br. at 23.) Scag does not dispute that the scope of the independent

and dependent claims is not the same, does not elaborate on what a purported

"meaningful" difference is, and fails to explain how steering controls moving

"with" the operator platform "in unison" is not a "meaningful" difference. (*Id.*) If it

is a foregone conclusion that steering controls "mounted on" the operator platform

is synonymous with "move with" the operator platform "in unison," as Scag argues

without support, Scag would not have needed to add the additional language in the

claim.

More importantly, even if the claim scope were otherwise identical, the

claim language and specification easily overcome any presumption of claim

differentiation. (Blue Br. at 44-46.) Scag argues that to overcome the presumption

of claim differentiation, "Toro must identify an expression of manifest exclusion or

an express disclaimer of claim scope in the patent or the patent's prosecution

history." (Red Br. at 23 (citing *Akamai v. Limelight Networks*, 805 F.3d 1368, 1376 (Fed. Cir. 2015).) Scag is wrong. The portion of *Akamai* Scag cites relates to disavowal, not claim differentiation. 805 F.3d at 1376. There is no suggestion in *Akamai* that manifest exclusion or an express disclaimer of claim scope is required to overcome claim differentiation. Instead, it is well-settled that claim differentiation is a weak presumption easily overcome by the plain claim language or specification; no clear disavowal is required. *Mycogen Plant Sci. v. Monsanto*, 243 F.3d 1316, 1329 (Fed. Cir. 2001); *Multiform Desiccants v. Medzam*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Wi-LAN*, 2016 U.S. App. LEXIS 13860, at *43-45.

4.  Scag disclaimed steering controls mounted to the chassis, the prior art feature it now attempts to claim.

While an express disclaimer is not required to rebut claim differentiation, Toro did demonstrate that Scag expressly disclaimed coverage of vehicles having steering controls mounted on the chassis. (Blue Br. at 47-49.) Scag argues that disclaimer does not apply because its "discussion" of the prior art was not a "criticism" and did not relate to a "necessary element of the invention." (Red Br. at 23-24.) First, Scag did not merely "discuss" the prior art, it distinguished it from Scag's "present invention" in order to obtain its patent. (Appx42, 3:25-27; Appx41, 1:56-60.) Contrary to the case relied upon by Scag, this is not "mere recognition in the specification that an aspect of a prior art system is 'inconvenient.'" *ScriptPro v. Innovation Assocs.*, 2016 U.S. App. LEXIS 14919,

*11 (Fed. Cir. Aug. 15, 2016). Scag taught that its invention—the "present invention"—solved the problems associated with the prior art. That is disclaimer. *Luminara Worldwide v. Liown Elecs.*, 814 F.3d 1343, 1353-54 (Fed. Cir. 2016); *Poly-America v. API Indus.*, 2016 U.S. App. LEXIS 18486, at *10-11 (Fed. Cir. 2016) ("an inventor may disavow claims lacking a particular feature when the specification distinguishes or disparages prior art based on the absence of that feature").

Further, Scag is wrong that its criticisms of the prior art related to elements of the invention that are not necessary. (Red Br. at 24.) Scag's asserted claims have two elements, a requirement that the suspended operator platform support the entire body of an operator during use and a linkage system. (Appx46-47, claims 11, 14, 21.) Both are "necessary" elements. Scag cannot reclaim through litigation ground that it ceded in its specification. Disclaimer applies here.

### 5. It is irrelevant if Scag's purported invention solved several problems.

Scag argues that Toro incorrectly characterizes the '475 patent as disclosing a single solution to a single problem. (Red Br. at 19-21.) Scag argues that there are

"numerous inventive aspects" relating to the suspended operator platform, including the linkage system.[2] (*Id.* at 21.) These arguments are irrelevant.

The '475 patent criticizes Scheele because, while Scheele's suspended operator platform isolated the seat and operator footrest from the chassis, Scheele's steering controls are mounted directly to the chassis and allow shock loads into the hands and arms of the operator. (Blue Br. at 17 (quoting Appx41, 1:34-60).) Scag does not dispute this, acknowledging the '475 patent cites "the disadvantage of having steering controls mounted on the chassis . . . ." (Red Br. at 20.) But Scag asserts that the Scheele suspension system would also "allow the platform to roll about a longitudinal axis, yaw, and sway" which could "lead to oscillations of the platform relative to the chassis." (Red Br. at 20 (citing Appx41, 1:40-50).)

The fact that Scag criticized Scheele on two separate grounds does not take away from the fact that Scag criticized Scheele for having steering controls mounted to the chassis and included a claim limitation directed to the element. *Andersen v. Fiber Composites*, 474 F.3d 1361, 1374 (Fed. Cir. 2007) ("An applicant's invocation of multiple grounds for distinguishing a prior art reference does not immunize each of them from being used to construe the claim language. Rather, as we have made clear, an applicant's argument that a prior art reference is

---

[2] Scag argues Toro "concedes" the claimed linkage system and stiffness adjuster are embodied in the accused mowers. (Red Br. at 21.) Toro made no such concession. (Appx328-333; Appx374.)

distinguishable on a particular ground can serve as a disclaimer of claim scope

even if the applicant distinguishes the reference on other grounds as well.").

Indeed, Scag included claim limitations on both supporting an entire body of an

operator during use of the vehicle and the suspension system. (Appx46-47.)

Contrary to Scag's arguments (Red Br. at 21), Toro is not reading these two

"inventive aspects" into Scag's claims—Scag did that with its chosen claim

language.

Further, Toro demonstrated that Scag criticized suspended seat prior art

based only on the fact that it did not isolate the operator's hands, arms, and feet

from receiving shock loads from the chassis. (Blue Br. at 16 (citing Appx41, 1:30-

33).) Scag did not criticize it based on rolling, yawing, or swaying. (Appx41, 1:25-

33.) Scag's criticisms of this art relate only to the shock loads being transmitted to

the operator. Scag purported to solve that problem by mounting its steering

controls to the suspended operator platform. It is irrelevant if Scag distinguished

other prior art on additional grounds or purported to solve additional problems.

## II.     Under the proper construction, the preliminary injunction must be reversed.

The district court found that the operator platform of all accused mowers

does not support the operator's hands and arms. (Appx10.) Under the correct

construction—in which the operator platform supports the seat and an entire body

23

of an operator *including* the operator's hands and arms during use of the utility vehicle—there is no infringement and the injunction must be reversed.

Scag argues that the district court did not *mean* what it said. (Red Br. at 35.) Scag also argues a new infringement theory on appeal. (Red Br. at 32-40.) None of these arguments has merit.

A.    The district court meant what it said—Toro's platform does not support the operator's hands and arms.

Faced with the district court's recognition that Toro's operator platform does not support the operator's hands and arms (Appx10), Scag argues this was not a finding but a "summary of the positions taken by each party." (Red Br. at 35.) There is no support for this argument. When the district court summarized the parties' positions, it made clear it was doing so. (Appx10 ("Scag argues" "According to the defendants" "Scag counters").) There is no such language in the quoted sentence. Scag cannot argue that a preliminary injunction should be enforced because the district court did not mean what it said. *Moore v. Std. Register*, 229 F.3d 1091, 1111 (Fed. Cir. 2000) ("[T]he district court must have meant what it said.").

Indeed, this fact was undisputed below. There was no dispute about the operation of Toro's mowers. The parties' entire claim construction dispute centered on whether the operator platform had to support only the operator's torso

and feet (as Scag repeatedly argued) or also had to support the operator's hands and arms (as Toro argued). (Appx441-442; Appx375.)

Scag argues that "[t]he steering controls are not a support structure" and "there is no evidence in the record that stands for the proposition that Toro's steering controls support an operator's hands and arms." (Red Br. at 18-19, 35-36.) There is evidence. These mowers are operated via the operator's hands. (Appx43, 5:1-32.) There is no dispute Toro's mowers have steering controls mounted to the chassis (Appx432; Appx435), which means its operator platform does not support the operator's hands and arms because the operator's hands and arms are not isolated from shock loads. (Appx365; Appx376; Blue Br. at 24.) This is consistent with the '475 patent, which makes clear that platform-mounted steering controls support the operator's hands and arms—this was the distinction over the prior art. (Blue Br. at 15-24, 38-40.) Not only is the district court's finding that Toro's accused mowers do not support the operator's hands and arms supported by the record, there is no evidence that would support an *opposite* finding, as there was no finding of fact to the contrary.

B.    Scag's alternate infringement theories were waived and lack support.

Scag argues that the record supports infringement under another new set of theories. (Red Br. at 32-40.) Scag argues Toro's operator platform "supports what the '475 patent describes as a certain 'sprung weight,' which includes the weight of

the entire body of the operator." (Red Br. at 34.) Scag further argues that "even if the steering controls do provide some support for an operator's hands and arms at some point" the operator platform supports the entire body of the operator "prior to engaging the steering controls." (Red Br. at 36; *id.* at 17, 34-38.)

Again, arguments raised for the first time on appeal are waived, and this Court does not fact-find in the first instance. *Sage*, 126 F.3d at 1426; *3M v. Avery Dennison*, 673 F.3d 1372, 1378 (Fed. Cir. 2012). All of these theories are new on appeal and thus are waived. Also, Scag's "weight" argument is dependent on the flawed "weight" claim construction argument discussed above and fails for the same reasons. (*Supra* I.B.)

Scag's reliance on situations where an operator's hands are not on the steering controls—such as when the operator is adjusting the seat, parking brake, throttle, or disengaging the blade-control switch—do not prove infringement because that is not "during use." (Red Br. at 17, 35-38.) Such acts are preparatory to the intended use of the machine: mowing. The claim language specifically includes the limitation of "during use of the utility vehicle" for each asserted claim. (Appx46-47, claims 11, 14, 21.) The specification makes clear that "during use" means "while mowing." (Appx41, 1:12-21.) Scag acknowledges this in its brief, noting "prolonged operation" can be "physically debilitating because operators are exposed to shocks, vibrations, and other forces that are generated by the

lawnmower **during use** that result from **driving the lawnmower** across uneven terrain." (Red Br. at 3-4 (emphasis added).) Likewise, arm rests do not prove infringement because the operator's hands are on the steering controls, not arm rests, during use. (Appx41, 1:12-21.)

In a last-ditch effort, Scag argues there is nothing that "precludes use of a different type of steering controls that do not support the hands and arms of the operator during use." (Red Br. at 39.) The '475 patent recognizes steering controls mounted to the platform support the operator's hands and arms—that was a distinction over the prior art. (Blue Br. at 15-24, 38-40.) And obviously such logic—that the accused products do not infringe but a different product might—cannot be used to maintain a preliminary injunction. Scag's alternate theories fail.

## III.    Toro raised substantial questions of anticipation and obviousness.

Without the benefit of any discovery or the time Scag had to prepare its case (at least six months), Toro located two pieces of prior art and explained they have all elements of claims 11, 14 and 21. The district court did not construe the only claim element it found missing and did not provide a sufficient analysis for this Court's review. The district court's conclusory rejections of Toro's prior art were clear error.

A.    Henriksson discloses an "operator platform."

The district court found only one element of asserted claims 11 and 14 missing from Henriksson—an operator platform. (Appx13.) Scag does not argue otherwise. The '475 patent does not define the term "operator platform." Claims 11 and 14 require only that the operator platform support a seat and the entire body of the operator during use of the utility vehicle. (Appx46, claims 11 & 14.) Scag now agrees with Toro that the operator platform must support the operator's torso, arms, hands, and feet. (Red Br. at 15.) The district court made no finding that Henriksson's driver's compartment does not support a seat and the torso, arms, hands, and feet of the operator. (Appx13.) It is clear that would be the case, as the operator is seated in and contained within the "driver's compartment." (Appx407, 1:15-17, 37, 40, 44-46, 50.) The district court erred as a matter of fact with its finding, and further erred by failing to provide any explanation as to how or why it concluded that the driver's compartment of Henriksson is not an operator platform, preventing this Court from engaging in a meaningful review. *Warner Chilcott Labs. Ireland v. Mylan Pharms.*, 451 Fed. App'x 935, 940 (Fed. Cir. 2011) (vacating preliminary injunction and remanding for further review).

To the extent the court rejected Henriksson because it is a "heavy-duty truck," the district court erred. (Appx13) "[A] reference may be from an entirely different field of endeavor than that of the claimed invention or may be directed to

an entirely different problem from the one addressed by the inventor, yet the reference will still anticipate if it explicitly or inherently discloses every limitation recited in the claims." *State Contr. & Eng'g Corp. v. Condotte Am.*, 346 F.3d 1057, 1068 (Fed. Cir. 2003). Scag does not dispute Henriksson never uses the term "heavy-duty" or "truck." (Appx407-408.) Thus, there can be no dispute that Henriksson is fairly characterized as a "utility vehicle." Scag also does not dispute that both claims 11 and 14 are directed to a "utility vehicle." (Appx46, claims 11 & 14.) Thus, to the extent that the district court rejected Henriksson as non-analogous prior art (although it did not state as much), that conclusion was legally erroneous. *State*, 346 F.3d at 1068.

Scag's attempt to distinguish Henriksson from a car further supports Toro's invalidity position. (Red Br. at 42-43 (citing Blue Br. at 15).) In its Opening Brief, Toro explained that unlike a car, the claimed invention uses a rigid chassis. (Blue Br. at 15.) Henriksson *also* employs a rigid chassis. (Appx407, 1:27-29.) Scag is also wrong that any difference in size or use of Henriksson, which is neither explicit in Henriksson nor claimed in the '475 patent, disqualifies it as an anticipatory reference. (Red Br. 41-42.) *State*, 346 F.3d at 1068. The claims of the '475 patent do not restrict the size or use of the claimed "riding utility vehicle" (Appx46-47), and Scag has failed to offer any evidence or authority supporting its assertion otherwise. (Red Br. at 41-42.)

The district court erred in failing to find the facts specifically and state its conclusions of law separately as to its conclusory determination that Henriksson's driver's compartment could not be an "operator platform" as claimed by Scag. Toro raised a substantial question of validity as to claims 11 and 14 that required the district court to deny the preliminary injunction request.

B.    <u>Scag does not dispute that Henriksson was trying to solve the same problems as Scag.</u>

A person of skill in the art trying to better insulate the operator from rigid-chassis shock loads would appreciate that Henriksson was solving the same problems. (Appx407, 1:17-20, 35-38.) Henriksson was aware of the shortcomings of similar prior art such as suspension seats. (Appx407, 1:39-46.) Similar to Scag's claims, Henriksson's vehicle included a rigid chassis and a suspended driver compartment that supported the entire body of the operator. (Appx407, 1:32-38.) While it is not apparent whether Henriksson's shocks included both a coarse- and fine-stiffness adjustor, an element of claim 21, one skilled in the art wanting to apply the teaching of Henriksson to a light utility vehicle would have easily found any number of coil-over shocks, such as Sasaki, that include both a fine and coarse adjustment. (Blue Br. at 55-57.) Sasaki required translation, which neither Scag nor the district court objected to.

Toro demonstrated that the district court's finding of no motivation to combine Henriksson and Sasaki was inconsistent with *KSR*. (Blue Br. at 57-58.)

Tellingly, Scag makes no mention of *KSR*. Toro raised a substantial question concerning validity and Scag failed to prove it lacked substantial merit. *Oakley v. Sunglass Hut*, 316 F.3d 1331, 1340 (Fed. Cir. 2003).

C.    Scag's "alternate grounds" are both incorrect and untimely.

Scag's alternate grounds for affirming the district court's rejection of Toro's substantial question of validity must be rejected because, with the exception of its mower-deck argument related to claim 21, these arguments were not made to the district court below. (Red Br. at 44-46.) Thus, they are waived. *Sage*, 126 F.3d at 1426.

Scag's alternate grounds should also be rejected because they are not correct. While Henriksson does not explicitly use the term "drive train," it is clear that "only those portions required for the illustration of the present invention are indicated." (Appx407, 2:14-15.) It would be clear to one skilled in the art that a drive train is necessary and included in such a vehicle—the vehicle is motorized and has wheels and is described as capable of propelling a trailer. (Appx407, 2:10-13.) As such, it would inherently include a drive train.

Similarly, Henriksson impliedly includes a seat from which the operator drives the vehicle. Henriksson describes the driver's compartment, from where the driver operates the vehicle. (Appx407, 1:15.) It describes seats in similar prior art

vehicles. (Appx407, 1:39-46.) One of skill in the art would understand that the driver would be seated in the driver's compartment when operating the vehicle.

Scag's argument regarding the rear portion of Henriksson's chassis is also incorrect. In the '475 patent, the back linkage 120 is shown and described as connected between the rear portion of the operator platform and the frame middle rail 13 of chassis 10. (Appx32; Appx44, 7:28-34.) The connection point is rear of the mid-point of both the frame and operator platform. So too in Henriksson, which shows back linkage 10 connected between the rear portion 12 of the operator platform 3 and a portion of the chassis 2, that is rear of the mid-point of both the frame and operator platform. (Appx403; Appx407, 2:46-55.)

Finally, as to claim 21, Henriksson explicitly states his vehicle can be of "any desired kind." (Appx407, 2:13.) "Any desired kind" could certainly include a riding utility vehicle as claimed in claim 21, for which a riding-mower having a mower deck would be included. *State Contr.* 346 F.3d at 1068. Scag's alternate grounds do not defeat Toro's substantial question of validity.

## IV.    The Equitable Factors Weigh Against The Injunction.

Scag does not dispute that the preliminary injunction will disrupt the status quo by harming the public and Toro. (Red Br. at 46-49.) Instead, Scag argues that a preliminary injunction is warranted because a lost sale to Toro is the loss of a "lifetime customer," but Scag has offered no evidence of this. Scag's conclusory

assertions are insufficient to support a preliminary injunction. *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Further, Scag's assertions are incorrect. Toro demonstrated its customers do not represent lost customers for Scag, but rather are loyal Toro customers who had no intention of purchasing a Scag product. (Appx383.) Despite Scag offering its product for nearly five years (Appx100 ¶¶ 5, 7; Appx58), these customers waited to purchase from Toro. (Appx75.) Scag has no evidence that it ever lost a customer to Toro, let alone a customer for life.

Scag relies on *Bosch*, a permanent injunction case, to support its assertion of substantial hardship. (Red Br. at 48.) Scag argues *Bosch* is relevant to preliminary injunctions because the Federal Circuit cited it in *Celgard*, a preliminary injunction case. (*Id.*) Scag fails to acknowledge that the Federal Circuit *vacated* the preliminary injunction in *Celgard. Celgard v. LG Chem.*, 624 Fed. App'x 748 (Fed. Cir. 2015). Scag also does not deny that *Bosch* is distinguishable due to the Court's finding that the defendant would be unable to pay a damages award. (Blue Br. at 60-61; Red Br. at 48.) Scag also does not dispute that its initial claim to have owned about 100% of the relevant market prior to the launch of the accused products is incorrect, and that the district court ignored Toro's evidence to the contrary without explanation (after rejecting Toro's request for discovery). (Blue Br. at 61-62.) Scag merely states that the district court found in its favor. (Red Br. at 9.)

Scag also has presented no evidence or argument on appeal demonstrating that the public interest weighs in its favor—because the public interest clearly favors vacating the injunction as demonstrated by Toro in its Opening Brief. (Blue Br. at 62-63.) Toro explained in its opposition that it used disclaimed prior art features. (Appx376.) As explained in is Opening Brief, Toro practices the prior art design of steering controls mounted to the chassis, which should be encouraged rather than punished. (Blue Br. at 62-63.)

## V.    The Injunction Violates Rule 65.

Rule 65 prohibits injunctions that "simply prohibit[] future infringement of a patent." *Int'l Rectifier v. IXYS*, 383 F.3d 1312, 1316 (Fed. Cir. 2004). That is exactly what the district court did here. (Blue Br. at 65.) Scag recognized this flaw and attempted to cure it below. As part of its briefing opposing Toro's motion to stay entry of the injunction, Scag proposed a more detailed injunction that included the specific mowers that it allegedly accused of infringement. (Appx542-543.) The district court did not enter that order.[3]

---

[3] Scag repeatedly suggests that the preliminary injunction was "approved" by three different judges. (Red Br. at 1-2, 11.) This assertion is misleading at best. Judge Pepper signed the decision for Judge Randa, who transferred this case (and all others) after the preliminary injunction decision, apparently due to health issues. (Blue Br. at 27 n.3.) There is no suggestion that Judge Pepper approved the decision. Judge Adelman then denied a motion to dismiss under Rule 12 and a request to stay pending appeal. (Appx21; Appx26.)

Scag argues that Toro and this Court should infer the required detail from the district court's decision. (Red Br. at 49-50.) The decision is not the injunction; the explicit terms of the injunction are what matters. *Int'l Rectifier*, 383 F.3d at 1316-1317. This Court should vacate the preliminary injunction because it does not comply with Rule 65(d)(1).

## CONCLUSION

The arguments presented in favor of a preliminary injunction now are vastly different than the ones presented to and accepted by the district court. Scag led the court astray with an unfounded claim construction of "entire body" in relation to a "chair," which excluded the operator's hands and arms. Scag abandons its "torso and feet only" position, conceding "an entire body of an operator" includes the operator's hands and arms. This is all that is required to reverse the preliminary injunction. Scag's new arguments do not salvage the injunction. Further, there is nothing in the record to support the district court's findings on invalidity or irreparable harm. Toro respectfully requests that this Court reverse the district court's claim construction and reverse the preliminary injunction.

October 20, 2016

By: /s/Rachel C. Hughey
     Anthony R. Zeuli
     Rachel C. Hughey
     MERCHANT & GOULD PC
     80 South Eighth Street, #3200
     Minneapolis, MN 55402
     (612) 332-5300

*Attorneys for Defendants-Appellants*
*The Toro Company and Exmark*
*Manufacturing Co., Inc.*

**PROOF OF SERVICE**

I hereby certify that on October 20, 2016, copies of Defendants-Appellants'

Reply Brief was served via CM/ECF upon the following:

Adam L. Brookman
Sarah M. Wong
Michael T. Griggs
BOYLE FREDRICKSON SC
840 N. Plankinton Avenue
Milwaukee, WI 53202

Attorneys for Plaintiff-Appellee

/s/Rachel C. Hughey
Rachel C. Hughey

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FEDERAL CIRCUIT RULE 32(a)

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.  This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    - this brief contains 6,984 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.  This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    - this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14 Times New Roman font.

October 20, 2016

By: /s/Rachel C. Hughey
      Anthony R. Zeuli
      Rachel C. Hughey
      MERCHANT & GOULD PC
      3200 IDS Center
      80 South Eighth Street
      Minneapolis, MN 55402
      (612) 332-5300

*Attorneys for Defendants-Appellants*
*The Toro Company and Exmark*
*Manufacturing Co., Inc.*